**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. and**<br>**TELEFONAKTIEBOLAGET LM**<br>**ERICSSON,**<br>                    **Plaintiffs,**<br><br>        **v.**<br><br>**TCL COMMUNICATION TECHNOLOGY**<br>**HOLDINGS, LTD., TCT MOBILE LIMITED,**<br>**and TCT MOBILE (US), INC.,**<br><br>                    **Defendants.** | **CIVIL ACTION NO.**<br>**2:14-cv-667**<br><br><br>**JURY TRIAL DEMANDED** |

## FOURTH AMENDED  COMPLAINT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (together, "Ericsson")
file this Fourth Amended Complaint against TCL Communication Technology Holdings,
Inc., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") and allege as
follows:

## NATURE OF THE ACTION

1.      This action is necessitated by the patent licensing "hold-out" tactics
employed by mobile handset vendor TCL over a span of more than *six and a half years* of
negotiations with Ericsson. TCL has steadfastly refused, and continues to refuse, to renew
its expired license to Ericsson's portfolio of 2G cellular standard essential patents. TCL
has also resolutely declined to license Ericsson's industry leading portfolios of 3G and 4G
cellular standard essential patents on the fair, reasonable, and non-discriminatory
(FRAND) terms that TCL's competitors and nearly every other participant in the mobile
telecommunications industry have accepted. Because TCL is an unwilling licensee who

has held-out to avoid or delay paying FRAND royalties under Ericsson's standard essential patents Ericsson has filed this suit against TCL to obtain protection of Ericsson's valuable intellectual property rights.

### THE PARTIES

2.      Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

3.      Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

4.      Upon information and belief, Defendant TCL Communication Technology Holdings, Ltd. is a Chinese company with its principal place of business at 15/F, TCL Tower, Gaoxin Nan Yi Road, Nanshan District, Shenzhen, Guangdong, P.R.C. TCL Communication Technology Holdings, Ltd. is one of four business units of its parent, TCL Corporation, which is also based in Shenzhen, P.R.C.

5.      Upon information and belief, Defendant TCT Mobile Limited (previously named T&A Mobile Phones Limited) is a wholly-owned subsidiary of TCL. TCT Mobile Limited is a company established under the laws of Hong Kong, having its registered office at Room 1520, Tower 6, China Hong Kong City, 33 Canton Road, Tsimshatsui, Kowloon, Hong Kong. In 2007, TCT Mobile Limited executed a license to Ericsson's portfolio of GSM and GPRS essential patents with limited coverage for TCL's single-mode 2G handsets. This license expired on March 8, 2014.

6.      Upon information and belief, Defendant TCT Mobile (US), Inc. is a Delaware corporation and wholly-owned subsidiary of TCL, with its principal place of

business at 25 Edelman, Irvine, California 92618. Upon information and belief, TCT Mobile US is directly involved in the sale of mobile devices under TCL's "Alcatel OneTouch" brand in the United States.

7.     Upon information and belief, TCL designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States mobile and internet products under two brands—"Alcatel OneTouch" and "TCL." TCL offers for sale, and/or sells smartphones and other mobile devices throughout the United States, including within this District.

## **JURISDICTION AND VENUE**

8.     This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1338(a).

9.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and (d), and 1400(b).

10.     This Court has personal jurisdiction over TCL. TCL has continuous and systematic business contacts with the State of Texas. TCL, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. TCL maintains its authorized warranty repair center for the United States in Richardson, Texas. TCL, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services into the stream of commerce with the intention and expectation that they will be purchased

3

and used by consumers in the Eastern District of Texas. These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas. TCL has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Also, TCL has purposefully directed into the Eastern District of Texas its licensing activities regarding Ericsson's portfolios of 2G, 3G, and 4G cellular standard essential patents, including the patents-in-suit. TCL employees have contacted, met with, and engaged in long-running patent licensing negotiations with Ericsson employees working in this District. Additionally, TCL has directed its own patent enforcement activities towards Ericsson Inc., a corporation with its principal place of business in the Eastern District of Texas.

## **BACKGROUND**

### A.    **ETSI and the FRAND Commitment.**

11.    The European Telecommunications Standards Institute (ETSI) is an independent, non-profit standard setting organization (SSO) that produces globally-accepted standards for the telecommunication industry. ETSI has more than 750 members, from more than 60 countries across five continents, including Ericsson and TCT Mobile Limited. In addition to its own activities, ETSI is also one of six SSOs that are organizational partners of the Third Generation Partnership Project (3GPP) which maintains and develops globally applicable technical specifications for the 2G (second generation), 3G (third generation), and 4G (fourth generation) mobile systems. Together, ETSI and its members have developed open standards that ensure worldwide interoperability between networks, devices, and network operators.

12.     Unlike some industries where patents are primarily used to exclude other companies from the market, patents play an active role in developing the telecommunication industry through standardization and licensing. Many SSO members, including Ericsson, own intellectual property rights (IPRs) related to technologies standardized by SSOs. Thus, technical standards adopted by SSOs may implicate member or non-member IPRs such that a patent license is required from the IPR owner in order to implement the standard.

13.     ETSI has developed and promulgated an IPR Policy. The ETSI IPR Policy is intended to strike a balance between the need for open standards on the one hand, and the rights of IPR owners on the other hand. ETSI requires its members to disclose patents that "are or become, and remain essential to practice" its standards or technical specifications. Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."

14.     Ericsson owns patents that are, and remain, essential to practice the GSM, GPRS, EDGE, WCDMA, and/or LTE standards ("Essential Patents"). Ericsson has declared to ETSI, and to 3GPP via ETSI, that it is prepared to grant licenses to its Essential Patents on FRAND terms and conditions to third-parties who implement products for the standard. Ericsson has made offers to TCL for a license under Ericsson's Essential Patents on FRAND terms, but TCL repeatedly has rejected those offers.

15.     Ericsson also owns a valuable portfolio of patents that, while not essential to compliance with any mobile telecommunication standards, are globally used to implement those standards in cellular handsets, smartphones, tablet computers, televisions, and many other electronic devices.

**B.     The 2G, 3G, and 4G Mobile Telecommunication Standards.**

16.     Second generation (2G) systems, based on digital technology, were first developed during the late 1980s and deployed in the 1990s. Today, the term "2G" is often used to refer simply to GSM, which has become the global *de facto* standard for 2G and which still accounts for a very substantial percentage of mobile telecommunication subscribers around the world. Generalized Packet Radio Service (GPRS) and Enhanced Data for Global Evolution (EDGE) are further developments to the GSM standard that enable faster data transfer speeds. These 2G standards have collectively become ubiquitous, and they remain the backbone of wireless telecommunication networks in the United States and worldwide.

17.     Third generation (3G) systems were developed to address a growing need for increased transmission capacity and speed. Although there were two leading distinct 3G standards in the initial stages of 3G development—UMTS (often called WCDMA) and CDMA2000—WCDMA subsequently became the global *de facto* standard for 3G. The main advantages of 3G over 2G include higher capacity, higher data speeds, and lower round trip delays, all of which allow for improved use of the available spectrum and more efficient networks. This, in turn, allows for the provision of enhanced user experiences for services such as mobile internet browsing, AV streaming, and location related services.

18.     As 3G technology was rolled out, handset manufacturers did not drop 2G and introduce 3G-only wireless devices. Because simultaneously upgrading all base station hardware and software across the country from 2G to 3G was impossible and financially infeasible, wireless service providers rolled out 3G technology gradually. Even now, not all wireless customers have upgraded their phones from 2G to 3G. Telecommunication hardware and software is therefore "multi-mode," or backwards compatible, to communicate with both 2G and 3G, as available.

19.     As users became more connected and the processing capabilities of mobile phones increased, the greater bandwidth and speed provided by 4G technology became necessary. The first publicly available 4G service, an Ericsson system using Release 8 of the 3GPP LTE standard, opened in Stockholm, Sweden on December 14, 2009. As with the introduction of 3G, the 4G rollout required multi-mode capability with older technologies for phones and base stations. 4G hardware and software is preferably backwards compatible with 2G and 3G standards to meet commercial requirements.

C.     **Ericsson's Leading Role in the Telecommunication Industry.**

20.     For more than two decades, Ericsson has pioneered the development of the modern cellular network. Due to the research and development work of more than twenty-five thousand Ericsson employees, every major telecom operator in the world buys solutions or services from Ericsson. Ericsson manages networks that serve more than one billion subscribers globally. In addition, forty percent of all mobile calls are made through Ericsson systems. Ericsson's equipment is found in more than one hundred and eighty countries.

7

21.     Ericsson is widely viewed as one of the leading innovators in the field of cellular telephony. As a result of its extensive research and development efforts, Ericsson has been awarded more than thirty-five thousand patents worldwide. In particular, Ericsson owns and patented hundreds of inventions that are essential to the GSM, GPRS, EDGE, WCDMA, and LTE telecommunication standards.

22.     Ericsson takes its FRAND commitments extremely seriously. It is Ericsson's philosophy that the standards should be open, which means that the standard is made accessible to the entire value chain and licenses for standard essential patents are offered on FRAND terms in line with the ETSI IPR Policy. Because Ericsson has been and remains so involved in shaping the telecommunication standards through its leadership in ETSI and 3GPP, Ericsson maintains a significant share of patents that are essential to the 2G, 3G, and 4G standards.

23.     Ericsson has repeatedly committed to license its Essential Patents on terms that are FRAND. And Ericsson has, in fact, widely licensed its Essential Patent portfolios. Ericsson has entered into more than one hundred license agreements that evidence the FRAND royalties that the telecommunications industry has agreed to pay Ericsson. Ericsson reinvests much of the licensing revenue it receives under these agreements into inventing the future generation of standardized telecommunication technologies.

**D.     TCL's "Hold-Out" Has Created the Current Licensing Dispute.**

24.     TCL requires a license to Ericsson's Essential Patent portfolios because TCL's products comply with the 2G, 3G, and 4G standards. TCL is well-aware of this, having previously negotiated a license to Ericsson's GSM and GPRS Essential Patents with coverage for TCL's single-mode 2G handsets. The parties executed this prior

agreement in March 2007 after negotiating for approximately two years. It expired on March 8, 2014.

25.     The parties' 2007 agreement was limited in scope to certain 2G single-mode handsets—the license grant did not extend to dual-mode or multi-mode handsets. As consideration for this limited license, TCT Mobile Limited agreed to pay Ericsson a FRAND royalty on all sales of single-mode handsets with GSM or GPRS capabilities sold by TCL worldwide, with the exception of sales made in mainland China.

26.     After entering into the 2007 license agreement, Ericsson discovered that TCT Mobile Limited was grossly underreporting its licensed handset sales to Ericsson and thus avoiding payment of substantial royalties. In 2011, Ericsson was forced to institute arbitration proceedings against TCT Mobile Limited in Sweden to recover the royalties owed.

27.     Because the March 2007 agreement offered license coverage only for TCL's single-mode 2G handsets, Ericsson and TCL began negotiating a broader license in the latter half of 2007. These negotiations originally involved Ericsson's 3G (WCDMA) standard essential patent portfolio. Later, the negotiations were expanded to also encompass Ericsson's 4G (LTE) standard essential patent portfolio. Over the course of more than six years, representatives from Ericsson and TCL met face-to-face at least ten times, conferred by phone on numerous occasions, and exchanged multiple emails and draft license agreements. Throughout the parties' negotiations, Ericsson extended multiple offers to TCL to license its 2G, 3G, and 4G standard essential patents on FRAND terms. TCL has refused to accept any of Ericsson's many offers.

28.     The parties' licensing negotiations have been unsuccessful for the simple reason that TCL wants a special deal and refuses to pay the FRAND rate paid by its competitors for Ericsson's Essential Patents. TCL fails to honor the fact that FRAND licensing is a two-way street, requiring not only that the licensor is fair and reasonable in providing licensing terms, but also that the licensee is fair and reasonable in accepting them when they are offered. Instead, TCL demands that Ericsson offer a license to TCL at a rate that is a small fraction of the rate other similarly situated companies pay Ericsson. Without a doubt, TCL is a hold-out seeking an unfair competitive advantage over its competitors who have licensed Ericsson's Essential Patents.

29.     TCL has now been operating without a license to Ericsson's 3G and 4G Essential Patent portfolios for years, during which time TCL has grown from a company with a limited presence outside of China into a major global smartphone player. And, because the parties' March 2007 patent license agreement is now expired, TCL is also operating without its prior limited license to Ericsson's 2G Essential Patent portfolio. Given TCL's refusal to license Ericsson's Essential Patents or to cease infringing, Ericsson has already been forced to file infringement claims against TCL in several other countries and now has no choice but to file this lawsuit for the purpose of protecting its patent rights in the United States.

## THE ERICSSON PATENTS-IN-SUIT

30.     United States Letters Patent No. 6,301,556 (the '556 Patent), entitled "Reducing Sparseness in Coded Speech Signals," was duly and legally issued to inventors Roar Hagen, Björn Stig Erik Johannson, Erik Ekudden, and William Baastian Kleijn on October 9, 2001. The '556 patent covers inventions relating to speech coding and signaling techniques used in mobile communications devices and networks. Ericsson owns by

assignment the entire right, title, and interest in the '556 Patent and is entitled to sue for past and future infringement. Ericsson has submitted an IPR licensing declaration to ETSI for the '556 patent.

31. United States Letters Patent No. 6,473,506 (the '506 Patent), entitled "Signaling Using Phase Rotation Techniques in a Digital Communications System," was duly and legally issued to inventors Stefan Javerbring and Mikael Hook on October 29, 2002. The '506 patent covers inventions relating to speech coding and signaling techniques used in mobile communications devices and networks. Ericsson owns by assignment the entire right, title, and interest in the '506 Patent and is entitled to sue for past and future infringement. Ericsson has submitted an IPR licensing declaration to ETSI for the '506 patent.

32. United States Letters Patent No. 6,418,310 (the '310 Patent), entitled "Wireless Subscriber Terminal Using Java Control Code," was duly and legally issued to inventor Paul Dent on July 9, 2002. The '310 patent covers inventions relating to a control processor in a wireless phone that includes a ROM-stored control program written in the JAVA language. Ericsson owns by assignment the entire right, title, and interest in the '310 Patent and is entitled to sue for past and future infringement.

33. United States Letters Patent No. 6,029,052 (the '052 Patent), entitled "Multiple-Mode Direct Conversion Receiver," was duly and legally issued to inventors Martin Isberg, Bjorn Lindquist, Peter Jakobsson, Jan Celander, Kjell Gustafsson, Lars-Peter Kunkel, Torsten Carlsson, and Jacob Mannerstrale on February 22, 2000. The '052 patent covers inventions relating to a multiple-mode receiver incorporating direct conversion rather than superheterodyne circuitry. Ericsson owns by assignment the entire

right, title, and interest in the '052 Patent and is entitled to sue for past and future infringement.

34.     United States Letters Patent No. RE 43,931 (the '931 Patent), entitled "Radiotelephones Having Contact-Sensitive User Interfaces and Methods of Operating Same," was duly and legally issued to inventors John Joseph Hayes, Jr., and Curtis Wayne Thornton on January 15, 2013. The '931 patent covers inventions relating to a wireless phone that includes a contact-sensitive user interface such as a touchscreen. Ericsson owns by assignment the entire right, title, and interest in the '931 Patent and is entitled to sue for past and future infringement.

35.     United States Letters Patent No. 7,149,510 (the '510 Patent), entitled "Security Access Manager in Middleware," was duly and legally issued to inventors Jonas Hansson and Bjorn Bjare on December 12, 2006. The '510 patent covers inventions relating to middleware for controlling access to a platform for a mobile terminal. Ericsson owns by assignment the entire right, title, and interest in the '510 Patent and is entitled to sue for past and future infringement.

36.     United States Letters Patent No. 6,535,815 (the '815 Patent), entitled "Position Updating Method for a Mobile Terminal Equipped With a Positioning Receiver," was duly and legally issued to inventors Leland Scott Bloebaum on March 18, 2003. The '815 patent covers inventions relating to providing location estimates on a mobile device. Ericsson owns by assignment the entire right, title, and interest in the '815 Patent and is entitled to sue for past and future infringement.

37.     TCL has imported into the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, smartphones and other devices for use in

a mobile communications networks that infringe the '556, '506, '310, '052, '931, '510, and '815 patents (collectively, the Ericsson Patents-in-Suit), or induce or contribute to the infringement of the Ericsson Patents-in Suit.

38.     Ericsson placed TCL on actual notice of the '506 and '556 Patents at least as early as March 15, 2012, at which time Ericsson identified the '506 and '556 Patents in correspondence sent to TCL. In addition, TCL had notice of the '310, '052, and '931 Patents as least as early as the filing of the Third Amended Complaint. The filing of this Fourth Amended Complaint constitutes notice of the '510 and '815 Patents in accordance with 35 U.S.C. § 287. Despite such notice, TCL continues to import into, market, offer for sale, and/or sell in the United States products that infringe the Ericsson Patents.

## COUNT I.

## CLAIM FOR PATENT INFRINGEMENT OF THE '556 PATENT

39.     Ericsson repeats and realleges the allegations in paragraphs 1-38 as if fully set forth herein.

40.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '556 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '556 Patent including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '556 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

41.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '556 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies

and/or distributes within the United States these devices and thus directly infringes the '556 Patent.

42.     TCL indirectly infringes the '556 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '556 Patent at least by March 15, 2012, and also received knowledge as of the date this lawsuit was filed.

43.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '556 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '556 Patent; further, TCL was aware that these normal and customary activities would infringe the '556 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '556 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '556 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

44.     TCL also indirectly infringes the '556 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '556 Patent at least by March 15, 2012, by virtue of correspondence from Ericsson to TCL, and also received knowledge as of the date this lawsuit was filed.

45.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '556 Patent. The Alcatel OneTouch Fierce is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '556 Patent.

46.     TCL's infringement of the '556 Patent has been willful. At least as early as March 15, 2012, Ericsson put TCL on actual notice of the '556 Patent. Upon information and belief, TCL acted with objective recklessness by proceeding despite an objectively high likelihood that its actions constituted infringement of a valid patent. TCL knew, or should have known, that its actions would cause direct infringement of the '556 Patent.

47.     This is an exceptional case warranting an award of treble damages to Ericsson under 35 U.S.C. § 284 and an award of Ericsson's attorneys' fees under 35 U.S.C. § 285.

## COUNT II.

## CLAIM FOR PATENT INFRINGEMENT OF THE '506 PATENT

48.     Ericsson repeats and realleges the allegations in paragraphs 1-47 as if fully set forth herein.

49.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '506 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '506 Patent including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '506 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

50.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '506 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '506 Patent.

51.     TCL indirectly infringes the '506 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '506 Patent at least by March 15, 2012, and also received knowledge as of the date this lawsuit was filed.

52.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the

Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '506 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '506 Patent; further, TCL was aware that these normal and customary activities would infringe the '506 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '506 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '506 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

53.     TCL also indirectly infringes the '506 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '506 Patent at least by March 15, 2012, by virtue of correspondence from Ericsson to TCL, and also received knowledge as of the date this lawsuit was filed.

54.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '506 Patent. The Alcatel OneTouch Fierce

is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '506 Patent.

55.     TCL's infringement of the '506 Patent has been willful. At least as early as March 15, 2012, Ericsson put TCL on actual notice of the '506 Patent. Upon information and belief, TCL acted with objective recklessness by proceeding despite an objectively high likelihood that its actions constituted infringement of a valid patent. TCL knew or should have known that its actions would cause direct infringement of the '506 Patent.

56.     This is an exceptional case warranting an award of treble damages to Ericsson under 35 U.S.C. § 284, and an award of Ericsson's attorneys' fees under 35 U.S.C. § 285.

## COUNT III.

## DECLARATORY JUDGMENT (FRAND)

57.     Ericsson repeats and realleges the allegations in paragraphs 1-56 as if fully set forth herein.

58.     Ericsson owns patents essential to the GSM, GPRS, EDGE, WCDMA, and LTE standards. Without a license, TCL will infringe upon Ericsson's Essential Patents.

59.     Ericsson, as the owner of patents that are essential, and remain essential, to ETSI standards, is obligated to grant TCL a license to Ericsson's Essential Patents on FRAND terms.

60.     There is a dispute between Ericsson and TCL concerning whether Ericsson has complied with its commitments to license its Essential Patents on terms and conditions consistent with Ericsson's IPR licensing declarations to ETSI and ETSI's IPR Policy. TCL contends that Ericsson has failed to offer a license under Ericsson's Essential Patents to

TCL on terms that are FRAND. This is a case or controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

61.     Ericsson is entitled to a declaratory judgment that Ericsson has complied with its IPR licensing declarations to ETSI, ETSI's IPR Policy, and any applicable laws during its negotiations with TCL in regard to FRAND terms for a license to Ericsson's Essential Patents.

62.     Ericsson is also entitled to a declaratory judgment that Ericsson has offered to grant TCL a license to Ericsson's Essential Patents on FRAND terms but to date TCL has refused to accept Ericsson's offers for a license.

63.     TCL is an unwilling licensee who will continue to infringe the Ericsson Patents unless it accepts a license or, alternatively, is enjoined from infringing by this Court. Ericsson has been and will continue to be irreparably harmed by TCL's infringement and by TCL's refusal to take a license.

## COUNT IV.

### CLAIM FOR PATENT INFRINGEMENT OF THE '310 PATENT

64.     Ericsson repeats and realleges the allegations in paragraphs 1-63 as if fully set forth herein.

65.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '310 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '310 Patent including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '310 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

19

66.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '310 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '310 Patent.

67.     TCL indirectly infringes the '310 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '310 Patent at least by the date of Ericsson's Third Amended Complaint.

68.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '310 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '310 Patent; further, TCL was aware that these normal and customary activities would infringe the '310 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '310 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '310 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

69.     TCL also indirectly infringes the '310 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '310 Patent at least by the date of Ericsson's Third Amended Complaint.

70.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '310 Patent. The Alcatel OneTouch Fierce is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '310 Patent.

## COUNT V.

## CLAIM FOR PATENT INFRINGEMENT OF THE '052 PATENT

71.     Ericsson repeats and realleges the allegations in paragraphs 1-70 as if fully set forth herein.

72.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '052 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '052 Patent including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '052 Patent include, but are not limited to, at least the Alcatel OneTouch Evolve.

73.     For example, at least the Alcatel OneTouch Evolve infringes one or more claims of the '052 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '052 Patent.

74.     TCL indirectly infringes the '052 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Evolve, who each perform all steps of the claimed invention. TCL received actual notice of the '052 Patent at least by the date of Ericsson's Third Amended Complaint.

75.     TCL's affirmative acts of selling the Alcatel OneTouch Evolve, causing the Alcatel OneTouch Evolve to be manufactured, and providing instruction manuals for the Alcatel OneTouch Evolve induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Evolve in their normal and customary way to infringe the '052 Patent. Through its manufacture and sales of the Alcatel OneTouch Evolve, TCL specifically intended its resellers and manufacturers to infringe the '052 Patent; further, TCL was aware that these normal and customary activities would infringe the '052 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Evolve and providing instruction manuals induced the end-users of the Alcatel OneTouch Evolve to use the Alcatel OneTouch Evolve in their normal and customary way to infringe the '052 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '052 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

76.     TCL also indirectly infringes the '052 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Evolve in their intended use. TCL received actual notice of the '052 Patent at least by the date of Ericsson's Third Amended Complaint.

77.     TCL's affirmative acts of selling the Alcatel OneTouch Evolve and causing the Alcatel OneTouch Evolve to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Evolve in their normal and customary way to infringe the '052 Patent. The Alcatel OneTouch Evolve is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '052 Patent.

## COUNT VI.

### <u>CLAIM FOR PATENT INFRINGEMENT OF THE '931 PATENT</u>

78.     Ericsson repeats and realleges the allegations in paragraphs 1-77 as if fully set forth herein.

79.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '931 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '931 Patent including, but not limited to, smartphones and other mobile devices with contact-sensitive user interfaces. The accused wireless communication devices that infringe one or more claims of the '931 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

23

80.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '931 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '931 Patent.

81.     TCL indirectly infringes the '931 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '931 Patent at least as of the date of Ericsson's Fourth Amended Complaint.

82.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '931 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '931 Patent; further, TCL was aware that these normal and customary activities would infringe the '931 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '931 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '931 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

24

83.     TCL also indirectly infringes the '931 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '931 Patent at least by the date of Ericsson's Third Amended Complaint.

84.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '931 Patent. The Alcatel OneTouch Fierce is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '931 Patent.

## COUNT VII.

## <u>CLAIM FOR PATENT INFRINGEMENT OF THE '815 PATENT</u>

85.     Ericsson repeats and realleges the allegations in paragraphs 1-84 as if fully set forth herein.

86.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '815 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '815 Patent including, but not limited to, smartphones and other mobile devices with location-based services. The accused wireless communication devices that infringe one or more claims of the '815 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

25

87.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '815 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '815 Patent.

88.     TCL indirectly infringes the '815 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '815 Patent at least as of the date of Ericsson's Fourth Amended Complaint.

89.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '815 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '815 Patent; further, TCL was aware that these normal and customary activities would infringe the '815 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '815 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '815 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

90.     TCL also indirectly infringes the '815 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '815 Patent at least by the date of Ericsson's Fourth Amended Complaint.

91.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '815 Patent. The Alcatel OneTouch Fierce is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '815 Patent.

## COUNT VIII.

## <u>CLAIM FOR PATENT INFRINGEMENT OF THE '510 PATENT</u>

92.     Ericsson repeats and realleges the allegations in paragraphs 1-91 as if fully set forth herein.

93.     TCL has infringed, contributed to the infringement of, and/or induced infringement of the '510 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '510 Patent including, but not limited to, smartphones and other mobile devices using the Android operating system. The accused wireless communication devices that infringe one or more claims of the '510 Patent include, but are not limited to, at least the Alcatel OneTouch Fierce.

94.     For example, at least the Alcatel OneTouch Fierce infringes one or more claims of the '510 Patent. TCL makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes the '510 Patent.

95.     TCL indirectly infringes the '510 Patent as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers, in this District and elsewhere in the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce, who each perform all steps of the claimed invention. TCL received actual notice of the '510 Patent at least as of the date of Ericsson's Fourth Amended Complaint.

96.     TCL's affirmative acts of selling the Alcatel OneTouch Fierce, causing the Alcatel OneTouch Fierce to be manufactured, and providing instruction manuals for the Alcatel OneTouch Fierce induced TCL's manufacturers, resellers and end-users to make or use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '510 Patent. Through its manufacture and sales of the Alcatel OneTouch Fierce, TCL specifically intended its resellers and manufacturers to infringe the '510 Patent; further, TCL was aware that these normal and customary activities would infringe the '510 Patent. Moreover, TCL's affirmative acts of selling the Alcatel OneTouch Fierce and providing instruction manuals induced the end-users of the Alcatel OneTouch Fierce to use the Alcatel OneTouch Fierce in their normal and customary way to infringe the '510 Patent. TCL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '510 Patent and with knowledge or willful blindness that the induced acts would constitute infringement.

97.    TCL also indirectly infringes the '510 Patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their intended use. TCL received actual notice of the '510 Patent at least by the date of Ericsson's Fourth Amended Complaint.

98.    TCL's affirmative acts of selling the Alcatel OneTouch Fierce and causing the Alcatel OneTouch Fierce to be manufactured and sold contribute to TCL's manufacturers, resellers, and end-users making or using the Alcatel OneTouch Fierce in their normal and customary way to infringe the '510 Patent. The Alcatel OneTouch Fierce is material to the invention, has no substantial non-infringing uses, and is known by TCL to be especially made or especially adapted for use in an infringement of the '510 Patent.

## DEMAND FOR JURY TRIAL

Ericsson hereby demands a trial by jury on its claims for patent infringement.

## PRAYER FOR RELIEF

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.    Adjudge that TCL infringes the Ericsson Patents-in-Suit;

B.    Adjudge that TCL's infringement of the '506 and '556 Patents was willful, and that TCL's continued infringement of the '506 and '556 Patents is willful;

C.    Award Ericsson damages in an amount adequate to compensate Ericsson for TCL's infringement of the Ericsson Patents-in-Suit, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.      Award enhanced damages pursuant to 35 U.S.C. § 284;

E.      Award Ericsson pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F.      Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.      Adjudge and declare that Ericsson complied with its FRAND commitments in its negotiations with TCL in regard to a license to Ericsson's Essential Patents or, alternatively, adjudge and declare what steps would be required for Ericsson to achieve such compliance;

H.      Adjudge and declare that TCL refused to accept Ericsson's FRAND compliant offers for a license to Ericsson's Essential Patents and, as a result, enter a permanent injunction against all TCL products found to infringe;

I.      Enter a permanent injunction against all TCL products found to infringe the '310, '052,'931, '815, and '510 Patents;

J.      Award, in lieu of an injunction, a compulsory forward royalty;

K.      Order an accounting of damages; and

L.      Award such other relief as the Court may deem appropriate and just under the circumstances.

Dated: October 21, 2014

Respectfully submitted,

**MCKOOL SMITH, P.C.**

By: */s/ Theodore Stevenson, III*
Theodore Stevenson, III, Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Jared M. Hoggan
Texas Bar No. 24065435
jhoggan@mckoolsmith.com
Nicholas Mathews
Texas Bar No. 24085457
nmathews@mckoolsmith.com
Warren Lipschitz
Texas State Bar No. 24078867
wlipschitz@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4000
Telecopier:  (214) 978-4044

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
Marshall, Texas 75671
Telephone: (903) 927-2111
Fax: (903) 927-2622

Laurie Fitzgerald
Texas State Bar No. 24032339
lfitzgerald@mckoolsmith.com
Kristina Baehr
Texas State Bar No. 24080780
kbaehr@mckoolsmith.com
Lori Karam
lkaram@mckoolsmith.com
Texas State Bar No. 24080970
300 West 6th Street, Suite 1700
Austin, Texas 78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744

**ATTORNEYS  FOR PLAINTIFFS
ERICSSON INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on October 21, 2014.

*/s/ Laurie Fitzgerald*
Laurie Fitzgerald