1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                  MARSHALL DIVISION


 3
    ERICSSON INC., ET AL     | DOCKET NO. 2:14CV667
 4                           |
                             |
 5  VS.                      | JANUARY 8, 2015
                             |
 6                           | 9:06 A.M.
    TCL COMMUNICATION        |
 7  TECHNOLOGY HOLDINGS      |
    LTD., ET AL              | MARSHALL, TEXAS
 8
    ---------------------------------------------------------
 9
            VOLUME 1 OF 1, PAGES 1 THROUGH 60
10         REPORTER'S TRANSCRIPT OF MOTION HEARING

11         BEFORE THE HONORABLE ROY S. PAYNE
              UNITED STATES MAGISTRATE JUDGE
12
    ---------------------------------------------------------
13

14  APPEARANCES:

15  FOR THE PLAINTIFFS:    THEODORE STEVENSON, III
                           NICHOLAS MATHEWS
16                         WARREN LIPSCHITZ
                           MCKOOL SMITH
17                         300 CRESCENT COURT
                           SUITE 1500
18                         DALLAS, TEXAS 75219

19                         LAURIE FITZGERALD
                           MCKOOL SMITH
20                         300 WEST 6TH STREET
                           SUITE 1700
21                         AUSTIN, TEXAS 78701

22
    FOR THE DEFENDANTS:    ERIC FINDLAY
23                         FINDLAY CRAFT
                           102 NORTH COLLEGE AVENUE
24                         SUITE 900
                           TYLER, TEXAS 75702

25
```

2



```
 1                          STEPHEN KORNICZKY
                            MARTIN BADER
 2                          SHEPPARD MULLIN RICHTER & HAMPTON
                            12275 EL CAMINO REAL
 3                          SUITE 200
                            SAN DIEGO, CALIFORNIA 92130
 4

 5

 6   COURT REPORTER:        TONYA B. JACKSON RPR-CRR
                            FEDERAL OFFICIAL REPORTER
 7                          300 WILLOW, SUITE 239
                            BEAUMONT, TEXAS  77701
 8

 9

10

11     PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
       TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1            (OPEN COURT, ALL PARTIES PRESENT.)

2            THE COURT:  For the record, we're here for the

3    motion hearing in *Ericsson, et al, versus TCL*

4    *Communication Technology Holdings, et al*, which is Case

09:06AM  5    No. 2:14-667 on our docket.

6            Would counsel state their appearances for the

7    record.

8            MR. STEVENSON:  Good morning, your Honor.  Ted

9    Stevenson, Laurie Fitzgerald, Nick Mathews, and Warren

09:06AM  10   Lipschitz for Plaintiff Ericsson.  Ready to proceed.

11           THE COURT:  All right.  Thank you,

12   Mr. Stevenson.

13           MR. FINDLAY:  Good morning, your Honor.  Eric

14   Findlay, Steve Korniczky, and Martin Bader for the TCL

09:07AM  15   defendants.  We are ready to proceed.

16           THE COURT:  All right.  Thank you,

17   Mr. Findlay.

18           I understand that counsel have resolved the

19   issues regarding the protective order.  And does that

09:07AM  20   mean that an agreed protective order will be submitted?

21           MR. FINDLAY:  Yes, your Honor.  We will get to

22   that in the next day or so, I believe.

23           MS. FITZGERALD:  Yes.

24           THE COURT:  Okay.  Good.  In that case, I

09:07AM  25   think that the logical place to start is with the Motion

4

1  to Transfer.  And, so, I guess -- I think, frankly, I'd

2  like to start with counsel for the defendant on that --

3  I'm sorry -- counsel for the plaintiff on that.

4          Whoever wants to speak to that.

09:07AM  5          MR. STEVENSON:  Yes, your Honor.  Thank you,

6  your Honor.

7          THE COURT:  And, Mr. Stevenson, I've had an

8  opportunity to review the briefs on that; and I'm

9  concerned about the implications of the ruling by

09:08AM  10  Judge Selna that was issued after the briefing on the

11  motion in this case.  I know there has been some

12  reference to it since then, but that's where I'd like you

13  to start.

14          MR. STEVENSON:  Is that the ruling on no

09:08AM  15  certification of interlocutory appeal?

16          THE COURT:  Well, I think that was part of it;

17  but the part of it that concerns me the most is the fact

18  that Judge Selna has ruled on whether or not the

19  California case is the first-filed action --

09:08AM  20          MR. STEVENSON:  Yes.

21          THE COURT:  -- with respect to patent

22  infringement allegations.

23          MR. STEVENSON:  Yes.  Yes, I will start there,

24  your Honor.  And, really, if you consider the totality of

09:08AM  25  what we have here, there's basically three buckets of

Motion Hearing 1-8-2015

5

1    claims.  There's the TCL patent claims, the Ericsson

2    patent claims, and then the FRAND claims.  And when I say

3    "the FRAND claims," the FRAND claims really amount to a

4    group of claims based on a breach of the -- alleged

09:09AM   5    breach of the FRAND obligation that are sounding in

6    contract, fraud, promissory estoppel, et cetera.

7              With regard to the TCL patent claims, our

8    position is they're first filed in California and once

9    the cloud of subject matter jurisdiction was at least in

09:09AM   10   Judge Selna's mind resolved, we have moved to dismiss our

11   declaratory judgment here of non-infringement and

12   invalidity as to TCL claims and we're happy to have those

13   proceed in TCL's choice of forum.

14             With regard to the Ericsson patent claims,

09:09AM   15   those are clearly first filed in this district; and our

16   view would be that first-filed claims in this district,

17   we should go forward in our choice of forum.

18             And that just leaves the last bucket, which

19   are what I'll call "the FRAND claims."  And the breach of

09:10AM   20   FRAND claims are different between California and Texas;

21   and as a result, because the FRAND claims are different

22   in the two venues, we think the FRAND claims can and

23   should go forward in this venue.

24             And I have some more detail; but if your Honor

09:10AM   25   has questions, I don't want to go too far without making

6

1    sure I've answered what you want to hear from me.

2            THE COURT:  Well, what I want you to address

3    is the effect of Judge Selna's finding that the

4    California action was first filed.

09:10AM   5            MR. STEVENSON:  Okay.  I can.  And I've got a

6    slide that can help focus the discussion.

7            The California case was first filed and -- let

8    me go through the timeline, actually, first so we can see

9    what's first filed because what ends up being important

09:11AM  10    in the first-filed inquiry is not just which overall case

11    is filed first but which claims were filed first.  And

12    the *BridgeLux versus Cree* case which we cited in our

13    briefs, which is an Eastern District case written by

14    Judge Clark, indicates that the way to do the analysis is

09:11AM  15    to look at segregable groups of claims when you're

16    looking at what's first filed.

17            And, so, applying that analysis here, I'd like

18    to go through a timeline to show your Honor in which

19    order various claims were filed in California versus

09:11AM  20    Texas so we can see what is first filed.  Because

21    Judge Selna basically said his case was filed first, and

22    nobody disagrees with that.  That's an obvious

23    chronological fact.  But more specifically, different

24    groups of claims were filed in different orders in

09:11AM  25    different jurisdictions.  So, I have this timeline slide;

7

and then the next slide is essentially a summary of what

is pending and what is first and what is second in

different jurisdictions.  And hopefully this will answer

what your Honor wants to hear and give you some detail on

09:12AM  that.

What happened first was TCL filed a lawsuit in

the Central District of California for breach of FRAND,

and that suit was filed in March of this year.  That suit

was merely a -- essentially what I'll call a

09:12AM  contract/fraud/estoppel/DJ-type suit.  There weren't any

patent claims in it.  It was based on diversity of

jurisdiction; and as TCL later admitted, that was a

flawed jurisdictional basis because there wasn't

diversity.

09:12AM  Ericsson moved to dismiss for lack of subject

matter jurisdiction; and because there was a cloud of

subject matter jurisdiction over that case, Ericsson

filed, in June, a declaratory judgment that it hadn't

committed a FRAND violation on a worldwide basis.  And

09:13AM  Ericsson also asserted two patents, the '506 and the

'556, which are essential patents to the cellular

telecommunication standard.

So, at this juncture, TCL had a case that it

had filed in California with flawed subject matter

09:13AM  jurisdiction where it was seeking a breach of FRAND

8

adjudication for what TCL later clarified is we believe

just the United States.  Ericsson is first filed on its

'556 and '506 essential patents in this district and has

filed a declaratory judgment for worldwide FRAND

09:13AM   adjudication in this district, which is first filed,

seeking that type of relief.

What TCL then did in California is after the

filing of that, it amended its complaint and it asserted

two of its own patents, the '718 and the '340.  The

09:14AM   reason it did that is to obtain federal subject matter

jurisdiction.  The big question then became -- well, we

actually and TCL also asserted a DJ of the two patents

Ericsson asserted here.  So, TCL's DJ on Ericsson '556

and '506, two essential patents, is a second-filed DJ in

09:14AM   California.  And, again, that's not in dispute.  That's

clear from the chronology.  And Judge Selna's, I think,

high-level statement that his case is filed first doesn't

address this more granular point.

The reason TCL did this was to obtain federal

09:14AM   subject matter jurisdiction.  They needed a federal

question out there because they didn't have diversity as

federal subject matter jurisdiction for their FRAND case.

And the big controversy between the parties became does

this amendment relate back.  In other words, can TCL say,

09:14AM   "We relate back.  We're really first filed"?  Ericsson

Motion Hearing 1-8-2015

9

1   took the position, "No, it doesn't relate back"; and TCL

2   said it did.  And there was a lot of briefing that went

3   back and forth with the number of cases.  It's a very

4   cloudy and murky area.

09:15AM   5        And Judge Selna says it does relate back -- in

6   other words, that amendment for federal subject matter

7   jurisdiction does relate back -- therefore making the

8   breach of FRAND in the U.S. claim that TCL filed the

9   first-filed FRAND claim.  And that was, I think,

09:15AM   10   Judge Selna's ruling.  And we asked Judge Selna to

11   certify an interlocutory appeal of that, and he declined

12   to allow us to do that.

13        After that, Ericsson amended to assert a

14   declaratory judgment of the '718 and '340 patents; and

09:15AM   15   after the motion to dismiss was denied, which is on the

16   timeline, we then requested leave to drop our DJ of the

17   '718 and '340 patents.  The reason being, once

18   Judge Selna essentially confirmed that he was going to

19   allow an amendment and allow those cases -- the TCL

09:16AM   20   patents to be brought out in California, at that point

21   our position was that's their choice of forum, it's their

22   patents, they can go ahead out there, and we're not going

23   to try to have a DJ on those patents out here.  That

24   motion by Ericsson to dismiss on those two patents is

09:16AM   25   currently pending before the court.  TCL opposes.

10

                    Subsequent to that, Ericsson added, by

amendment that the court hasn't ruled on yet, five

implementation patents.  And what I mean by

"implementation patents," your Honor, is there's two

09:16AM   kinds of patents at issue in this case.  Some are

essential patents.  Essential patents are patents that

must be infringed to comply with the telecommunication

standard, such as 4G and 3G or 2G.  Implementation

patents are other patents that aren't essential.

09:16AM            So, the importance of that distinction is

essential patents are subject to Ericsson's FRAND

commitment; implementation patents are not.  So, what we

have is a request to add five implementation patents.

                    So, with that timeline, here's a summary of

09:17AM   where I think we are on first and second filed in the two

cases.

                    Let's start with Central District of

California.  Out in Central District of California, TCL

has a claim for breach of FRAND.  And when I say "breach

09:17AM   of FRAND," it's really based on the operative allegation

that Ericsson didn't follow through with its commitment

it made to ETSI, which is a written commitment that

formed a contract of which TCL is a third-party

beneficiary.  Their allegation is that Ericsson didn't

09:17AM   follow through with that contract by offering TCL a

royalty rate that it believes is FRAND and other terms

that it believes are FRAND.  And that breach of

obligation then is asserted by TCL in a number of

different claims, such as breach of contract, promissory

09:18AM  estoppel, fraud, and they also have a declaratory

judgment request to set a rate.

But their request for relief is, as we

understand it, not worldwide and that's what's very

important here and that's why I put "U.S." next to it.

09:18AM  And I use "U.S." as a monitor, as a placeholder.  I don't

know that it's necessarily just limited to the U.S.  But

what came up in California and the reason I put that

there is we have a worldwide licensing dispute with TCL.

Ericsson is a holder of thousands of essential patents

09:18AM  across the world.  It invests $5 billion a year in

research and development, and we've had a seven-year

worldwide dispute over licensing going on with TCL.  And

what Ericsson really wants out of this case, candidly, is

it to end with a license agreement with TCL.  We don't

09:18AM  want to be pursuing patent infringement trials all over

the world.  But, unfortunately, we can't get to that

point.

What happened in California was we made the

argument to Judge Selna if TCL isn't going to agree to be

09:19AM  bound by the outcome of this trial, then they shouldn't

1  be able to go forward with a declaratory judgment.

2          And Judge Selna asked counsel for TCL, "Is TCL

3  going to be bound?"

4          And they said, "Well, yes, we are."

09:19AM  5          Subsequent to that, as we attempted to clarify

6  it, our position was, well, we're being -- we're agreeing

7  to be bound by a worldwide resolution; and TCL said, "No,

8  we're not going to commit that the resolution of this

9  case is going to be a worldwide license to Ericsson's

09:19AM  10  patents.  It may be U.S., it may be more, but we aren't

11  committing out in California that the result of the

12  California case will be a worldwide license."  And that's

13  a very important point here because I think the -- all we

14  know is the California case, TCL is going to be bound to

09:20AM  15  a U.S. adjudication plus maybe more, but we don't know

16  what that is.

17          So, that's Claim No. 1 that is pending out

18  there; and I gave that long description of the claim

19  because it's going to be very important because

09:20AM  20  Ericsson's claim here is different on FRAND.  And I'm

21  going to get to that in a minute.

22          The second claim pending out in California, or

23  group of claims, is infringement of the two TCL patents

24  '718 and '340; and that's first filed out there.  No

09:20AM  25  question about it.

1           The third claim pending in California is TCL's

2  declaratory judgment of non-infringement and invalidity

3

4

09:20AM  5

6

7

8

9

09:21AM  10

11

12

13

14

09:21AM  15

16

17

18

19

09:21AM  20

21

22

23

24

09:22AM  25

14

1  unwilling licensee.

2           The difference is going to be at the end of

3  this we're requesting your Honor grant a worldwide

4  adjudication -- or an adjudication of Ericsson's

09:22AM  5  worldwide licensing offer to TCL.  We have one rate, a

6  blended rate for the entire world.  And that is going to

7  resolve, in our view, hopefully, the worldwide dispute

8  between the parties.

9           THE COURT:  Does the claim asserted by TCL in

09:22AM  10  California relating to FRAND, does it expressly relate

11  only to the United States?

12           MR. STEVENSON:  No.  It says breach of

13  contract, breach of obligation.  But in subsequent

14  correspondence where TCL is essentially explaining what

09:23AM  15  its -- what the scope of its obligation to be bound is,

16  TCL has made it clear -- and I've got a letter from them,

17  and it's in the record.  It's Exhibit 5 to Ericsson's

18  response, and I'll put it on the Elmo.

19           This is a letter that was sent by counsel for

09:23AM  20  TCL to Ericsson, and in the second paragraph (reading) we

21  do not necessarily agree that having the California court

22  determine FRAND rates and/or FRAND terms on a worldwide

23  basis is appropriate or that Judge Selna would agree to

24  decide these issues on a worldwide basis regardless of

09:24AM  25  any stipulation by the parties.

1       This letter arose in the context of us trying

2   to work on the scheduling for the California case.  And

3   we have been trying to meet and confer with counsel.  We

4   don't even have a trial date yet in California, but we do

09:24AM   5   have an upcoming scheduling conference.  We have been

6   working on Rule 26, and we have been repeatedly asking

7   TCL for a procedure which would lead to a worldwide

8   adjudication of FRAND.  TCL has consistently refused to

9   commit to an adjudication of the worldwide dispute and

09:24AM   10   whether Ericsson's worldwide offers have complied with

11   FRAND.

12       What they tell us is -- and, again, they're

13   the master of their claim in California, or at least they

14   purport to be.  But what they tell us is -- so far

09:24AM   15   they've said, "Well, it should be the United States.

16   Maybe you add France to that."  We recently got a letter

17   suggesting France should be added to the mix.  But

18   they've never committed to do it on a worldwide basis.

19       So, as a result, here's where we are.  There's

09:25AM   20   no dispute we have a current ripe dispute with TCL on a

21   worldwide basis.  There is litigation in six other

22   countries besides the U.S.  TCL is pursuing and selling

23   handsets royalty-free across the world.

24       The declaratory judgment that has been filed

09:25AM   25   in California is not necessarily going to resolve the

Motion Hearing 1-8-2015

16

1    entire dispute, and Judge Selna -- in fact, we had this

2    discussion with Judge Selna; and he said at a hearing --

3    and this is in the record that we put before you -- he

4    doesn't know if he's going to resolve on a worldwide

09:25AM  5    basis this dispute.  And of course courts have discretion

6    in a declaratory judgment context about what they're

7    going to do.

8              THE COURT:  Doesn't that suggest that he

9    considers that it's before him?

09:25AM  10             MR. STEVENSON:  There is a declaratory

11   judgment that is before him.  That is certainly the case.

12   But the real question becomes where are we left if

13   Judge Selna decides, based on TCL's urgings, that he is

14   only going to resolve the United States or the United

09:26AM  15   States plus France?  We haven't gotten our dispute

16   resolved; and then we are three years down the road, two

17   years down the road and we have no resolution of the

18   worldwide licensing dispute.

19             THE COURT:  The claims that you're bringing in

09:26AM  20   this court would include the U.S. and whatever other

21   countries may get resolved in California, wouldn't they?

22             MR. STEVENSON:  The patent claims that we're

23   bringing won't get resolved in California.  So, we have

24   the --

09:26AM  25             THE COURT:  At this point I'm just talking

1    about FRAND.

2              MR. STEVENSON:  Right.  Okay.  Limited to

3    FRAND, there is a possibility and we're going to ask that

4    that happens, but we don't know that it will.  And my

09:27AM  5    point to your Honor is until there is a commitment from

6    TCL -- because really they hold the keys here until TCL

7    commits and says, "That's right.  What we said we'd be

8    bound in California, we meant, we'll be bound.  At the

9    conclusion of that litigation with whatever the rate is,

09:27AM  10    we'll sign a license agreement with Ericsson and we'll

11    start writing them a royalty check in accordance with

12    whatever the adjudicated terms are and that should be

13    worldwide."  If TCL will commit to that, we don't need to

14    go forward any further with this case in Texas on FRAND.

09:27AM  15              But until that commitment is made, then what

16    TCL is asking to have happen in California is a subset

17    and a mere subset of the dispute before your Honor which

18    is where Ericsson is asking for a worldwide determination

19    of whether its global licensing offer was FRAND or not

09:28AM  20    and is agreeing to be bound by your Honor's result.  So,

21    that's the critical issue.

22              Judge Selna has something -- at least as TCL

23    has positioned it and as TCL has self-interpreted its

24    agreement to be bound -- that is more limited than what

09:28AM  25    you have and TCL can cure that by agreeing to a worldwide

Motion Hearing 1-8-2015

18

1   adjudication, but until they do that, your Honor still

2   has a claim that can and should go forward because

3   there's no assurance that Judge Selna will make the

4   adjudication we're asking be made and there's a ripe case

09:28AM   5   of controversy.

6                THE COURT:  All right.

7                MR. STEVENSON:  And let me tell you, judge.  I

8   have been talking a lot about worldwide versus U.S.; and

9   one question that may be in your mind is, "Well, why is

09:28AM   10  worldwide adjudication so important for Ericsson as

11  opposed to just getting the U.S. adjudicated?"  And

12  here's really the problem in this case and this is why

13  we're here and it's why we're here in your court.

14  Ericsson has been contributing its inventions to the ETSI

09:29AM   15  standards setting organization for decades.  Spends about

16  $5 billion on research and development every year, has

17  thousands of patents.  It has hundreds of licensees --

18  hundreds of licenses for its standard essential patents

19  and we've offered TCL terms very similar to what its

09:29AM   20  competitors who have signed licenses with Ericsson have

21  taken and they just refuse to sign and it -- Ericsson

22  needs a remedy.  It needs to be able to get a licensing

23  agreement with TCL.

24                The hope for worldwide adjudication is that

09:29AM   25  Ericsson can get one adjudication by a neutral, a

19

1    court -- we're even willing to go to an arbitrator and

2    have an adjudication of what is a fair and reasonable

3    rate and other terms -- be bound by it, and we'll sign an

4    agreement.

09:30AM   5           But what TCL is suggesting, by resisting the

6    worldwide single adjudication, is that we go country by

7    country; and if Ericsson has to go country by country to

8    establish infringement, to establish FRAND, to get a

9    different rate set, essentially the idea is Ericsson may

09:30AM  10   run out of steam before TCL runs out of cash and finance.

11   It takes a long time to file litigation in different

12   countries, to go through lawsuits, to wait for trials, to

13   go through appeals.  And the point is that if a company

14   like Ericsson with a worldwide portfolio has to go

09:30AM  15   country by country to get full value for its

16   contributions to the standards from a company who's

17   selling handsets royalty-free, how does Ericsson ever get

18   full value unless it can get a worldwide adjudication?

19   And that's why we're here, and that's why this is

09:31AM  20   important to us.

21           THE COURT:  Do you have precedent for U.S.

22   courts having worldwide jurisdiction?  In other words,

23   are there other cases where parties have sought a

24   worldwide adjudication of FRAND and been successful?

09:31AM  25           MR. STEVENSON:  Yes.  This has come up before

20

09:31AM

1    for Ericsson in litigation against Samsung.  That was in

2    the ITC.  It didn't lead to an actual published decision,

3    but both sides in the ITC presented their FRAND rates and

4    their FRAND terms on a portfolio-wide basis.  That

5    happened recently with IDC in the ITC, and I can get you

6    the cite for that.  There is an opinion from Judge Essex

7    on that.  There have been other cases -- further FRAND

8    cases on 802.11 I believe that involved U.S. patents.

9             But further to your question, your Honor, it's

10   certainly the case that although patents are country by

11   country in nature -- in other words, a U.S. court can't

12   handle a patent infringement claim on a French patent,

13   for instance -- the ETSI FRAND commitment is different.

14   It's contractual in nature.  So, for instance, when

15   Ericsson commits to ETSI that it will offer -- and that's

16   a standards setting group -- that it will offer licenses

17   on fair, reasonable, nondiscriminatory terms, that forms

18   a contract between Ericsson and ETSI to which the

19   industry is a third-party beneficiary; and the concept

20   is -- and it's really not remarkable for federal

21   courts -- is that when you have a contract, that can be

22   adjudicated by a federal court in the United States even

23   though performance under the contract might involve other

24   countries.  That happens all the time.

25             And, in fact, in this case the performance

09:33AM

1   would be the contract between Ericsson and TCL in which

2   Ericsson would provide a license for its worldwide

3   portfolio and TCL would pay money.  That can be

4   adjudicated in the United States by a United States court

5   because it's really just a contract.  So, your Honor

6   would be adjudicating whether Ericsson has breached an

7   obligation, a contractual obligation that has United

8   States as well as foreign ramifications.

9        THE COURT:  Well, that contract does not

10  exist, right?

11       MR. STEVENSON:  It does exist.  Yes, it does.

12  In fact, I'll show you the contract right now.

13       THE COURT:  Okay.

14       MR. STEVENSON:  That's basically the contract

15  (indicating).

16       And the way it works is this, your Honor.

17  When -- so, in the standard setting organizations, many

18  companies attend; and they basically show up with their

19  inventions.  They contribute them, and then the best

20  inventions get voted into the standards.  But what the

21  standard setting organizations do is they have what are

22  called "declarations," and the reason they do this is

23  they want to make sure that licenses are available to

24  people who practice standards as part of voting them in.

25  And this is a declaration that Ericsson signed and in

1   fact most of the other -- or virtually all of the other

2   companies involved in the standard setting organization

3   signed.  And Ericsson has submitted this declaration; and

4   it basically says (reading) to the extent the IPRs, or

09:34AM   5   the patents, disclosed in the attached information

6   statement are or become and remain essential in respect

7   to the ETSI work item, standard specification identified

8   in the attached IPR information statement, the affiliates

9   are prepared to grant irrevocable licenses on terms and

09:34AM   10   conditions which are in accordance to 6.1.  And 6.1

11   basically says fair, reasonable, and nondiscriminatory.

12   This is the contract, and Ericsson has entered into it

13   with ETSI.

14          And then as patents are identified that are or

09:35AM   15   may become essential, Ericsson from time to time puts an

16   annex out, you know, with the lists of patents and has

17   declared thousands of patents under this and that's the

18   contract that Ericsson has with ETSI and it's in force

19   today.

09:35AM   20          THE COURT:  So, what you're saying is that the

21   declaratory judgment action is to seek a declaration that

22   Ericsson has not violated its obligation under its

23   agreement with ETSI or whatever the entity is.

24          MR. STEVENSON:  That's exactly correct.

09:35AM   25          THE COURT:  And that issue, that declaration,

23

1    is being sought in California?

2            MR. STEVENSON:  Not by us.

3            THE COURT:  No, but by TCL.  TCL is seeking a

4    declaration that you violated that.

09:36AM  5            MR. STEVENSON:  As to some limited geographic

6    coverage, yes.

7            THE COURT:  Does it -- but you say its

8    pleadings don't indicate that there's a limited

9    geographic coverage.

09:36AM  10           MR. STEVENSON:  It pled generally, but then

11   their subsequent conduct and letters indicate it is less

12   than worldwide.  And of course Mr. Korniczky can correct

13   me.  If they've willing to have a worldwide adjudication,

14   I'm sure they'll be happy to tell us that; and that may

09:36AM  15   end things early.

16           THE COURT:  And if there is an adjudication of

17   that declaration without any geographic limitation, why

18   wouldn't it apply worldwide?

19           MR. STEVENSON:  That's exactly the question.

09:36AM  20   What TCL is saying is "We want the California court to

21   adjudicate what Ericsson's rate should be under this

22   contract, but we just want to be bound for" -- I'm going

23   to put an "X" here.  I think it's the U.S., I think it's

24   France maybe plus the U.S. based on the letter we just

09:37AM  25   got from --

Motion Hearing 1-8-2015

24

1          THE COURT:  What does it matter what they say

2    they want to be bound by?  If the court adjudicates it

3    without any geographic limitation in California, how is

4    that different than the court adjudicating it here

09:37AM    5    without any geographic limitation?

6          MR. STEVENSON:  Here's why.  When Ericsson

7    makes a license offer -- and we've made license offers to

8    TCL -- we've made them on a worldwide basis.  Basically

9    the license is TCL pays X percent of the price of a

09:37AM   10    handset to Ericsson for any sales it makes around the

11    world -- okay -- and is licensed to the entire Ericsson

12    worldwide portfolio.  And that's the same agreement, by

13    the way, that virtually every other licensee has with

14    Ericsson.  That's how Ericsson and all the other

09:37AM   15    companies who license patents in this space do business.

16    That's just what it is.  That rate is what I'll call a

17    "worldwide blended rate."  Right?  So, the rate for the

18    world is covering, on a blended basis, countries where

19    Ericsson has a lot of patents, a medium amount of

09:38AM   20    patents, or a small amount of patents; and it all blends

21    together.

22          If, on the other hand, we say, well, what's

23    the adjudication of just the U.S., to take an example,

24    does it adjudicate the same question -- because I think

09:38AM   25    that's what your Honor's question might have been.  Are

25

                  1   we just getting to the same point?  The U.S., if you look

                  2   at that as a standalone, is completely different because

                  3   Ericsson happens to be stronger in the U.S.  It has more

                  4   patents in the U.S. than the aggregate of the world.  So,

09:38AM           5   we might determine a U.S. rate; and TCL may say we're

                  6   bound by a U.S. rate, "We'll take a U.S. license."  But

                  7   that hasn't resolved the question of whether Ericsson's

                  8   offers and whether Ericsson's going forward FRAND rates

                  9   for the rest of the world are truly FRAND.  Hasn't done

09:39AM          10   anything to that question.  And then what TCL can say is,

                 11   "Well, you know, we sell handsets all around the

                 12   world" -- and, in fact, you know, they're biggest I think

                 13   in China and in eastern Europe, Russia.  They have a

                 14   small amount of sales in the U.S.  They can say, "Well,

09:39AM          15   fine.  We'll take the U.S. license and whatever the U.S.

                 16   rate is and, you know, Ericsson, if you want to do

                 17   something in other countries, so be it.  We're not going

                 18   to pay you."  And that's the problem.  That's the

                 19   country-by-country problem.

09:39AM          20          That's why we're here seeking from your Honor

                 21   a worldwide adjudication.  And the court has the power to

                 22   do that and is not in conflict with the first-filed rule

                 23   because the adjudication here of worldwide is a

                 24   completely different animal than just adjudicating a

09:39AM          25   specific country or countries on a more limited basis.

It's just a different -- and the way these cases get

tried is the patent owner comes into court with all its

license agreements and we -- we're going to produce and

we're going to move into evidence all of Ericsson's

09:40AM    licenses and we'll provide economic analyses of what the

terms are, what the aggregate rates are, what TCL's

closest competitors are paying, how those agreements are

structured, and we'll show you that the -- the offer that

we have on the table to TCL and what our reference rates

09:40AM    are and then your Honor can decide or the jury can decide

whether what we are offering is indeed fair, reasonable,

and nondiscriminatory.  In other words, if we offered TCL

and are we offering TCL a deal that's within the range of

what others are paying.

09:40AM          THE COURT:  Well, let me just understand this

from a bottom-line standpoint.  You can't make TCL take a

license even if you win your FRAND case, right?

          MR. STEVENSON:  Absent agreement to be bound,

correct.

09:40AM          THE COURT:  Well, even if they -- all right.

I mean, "absent agreement" means you can't force them.

          MR. STEVENSON:  Well, they've agreed in

California to be bound to something; but if we put that

aside, you're right.  I can't --

09:41AM          THE COURT:  Even if they're bound, they don't

Motion Hearing 1-8-2015

27

1    have to take a license.  It's just if they don't take a

2    license, they're exposed to infringement claims, right?

3              MR. STEVENSON:  No, because I think if you're

4    saying -- if TCL goes into court in California and says,

09:41AM  5    "Judge, you're not issuing an advisory opinion.  Go ahead

6    and determine FRAND.  We agree to be bound" and then

7    being bound means something other than paying the

8    adjudicated rate to Ericsson, they haven't agreed to be

9    bound to anything.  That's just operation of law.

09:41AM  10             THE COURT:  I mean, agreement, I -- normally

11   the courts can function absent agreement.  We can

12   exercise authority over people who don't agree to

13   anything.

14             MR. STEVENSON:  Right.

09:41AM  15             THE COURT:  And FRAND is a defense to an

16   infringement action, is it not, that -- if they're saying

17   you didn't offer a license on a fair, reasonable, and --

18   whatever the other --

19             MR. STEVENSON:  Nondiscriminatory.

09:42AM  20             THE COURT:  -- nondiscriminatory basis.

21             MR. STEVENSON:  It's actually not a defense

22   *per se*.  It's not like invalidity.  It's not actually

23   even a defense of license.  What TCL is saying -- for

24   instance, if we sue TCL for infringement -- okay -- and

09:42AM  25   they say, "Oh, wait a second.  Ericsson, you breach

FRAND.  We want an adjudication of what the FRAND rate

is," that doesn't result in a license and therefore a

defense unless they actually take the accepted rate.

And, in fact, there's a very interesting case.

09:42AM   It was a case between -- we cited to it in our briefs --

between Apple and Motorola.  It was up in the Western

District of Wisconsin.  That was a case where Motorola

was accusing Apple of infringement of its standard

essential patents and Apple filed a declaratory judgment

09:42AM   of breach of FRAND up in -- or actually not a declaratory

judgment but a breach of FRAND case up in the Western

District of Wisconsin.  Apple agreed to be bound, and

then at the pretrial conference the judge said -- Judge

Barbara Crabb said, "Now, I understand at the conclusion

09:43AM   of this, whatever rate I set, the parties are going to

enter into a license."

And Apple stood up and said, "Well, we're only

going to enter into the license if the rate you set is

less than a dollar a phone."

09:43AM   And she stopped everything and dismissed the

case because it would just be an advisory opinion.

Judge Davis did something very similar.  We

had a case for Ericsson over 802.11 against D-Link,

Intel, and five other defendants in Tyler two years ago;

09:43AM   and in that case the same thing -- and Judge Davis wrote

1   an opinion on it -- the same thing came up where the

2   defendants wanted a FRAND adjudication.  We said, "Well,

3   they've got to be bound by it."  They refused to be bound

4   any further than the United States, and Judge Davis

09:44AM  5   declined to issue a FRAND adjudication.  He basically

6   said, "I'm not going to set a rate."  What he determined

7   is that Ericsson had not violated its FRAND obligation --

8   so, that was basically a thumbs-up/thumbs-down yes or

9   no -- but he refused to say, "Here's what the rate ought

09:44AM  10   to be on going-forward basis" because the defendants

11   hadn't agreed to be bound.

12          So, the answer to your Honor's question is it

13   a defense, it's really not a defense.  It's a breach of

14   contract that can then lead to a license and the license

09:44AM  15   would be the defense.

16          THE COURT:  So, how are you going to get TCL

17   to agree to be bound worldwide here?

18          MR. STEVENSON:  That's exactly the question.

19   Here's how we do it.

09:44AM  20          THE COURT:  Okay.

21          MR. STEVENSON:  In this case we're going to

22   ask your Honor to establish that Ericsson has not

23   violated FRAND in its rate offer and other term offer to

24   TCL and then if your Honor determines there's been no

09:44AM  25   breach there or even if your Honor determines that some

1    of the terms are not in compliance with FRAND and reforms

2    them, Ericsson will offer those terms to TCL and we'll

3    hold that offer open for a reasonable period of time.  If

4    TCL takes it, it ends the worldwide dispute.  If TCL

09:45AM  5    doesn't take it, then we're asking your Honor, consistent

6    with what other courts have done, to hold that they're an

7    unwilling licensee.

8           A holding of unwilling licensee has

9    ramifications within the patent law allowing certain

09:45AM  10   remedies to be requested, and we can request those

11   remedies on a worldwide basis.  Thus, it's our hope that

12   the finding of an unwilling licensee and the -- by a

13   court on a worldwide -- on a license offer that is

14   worldwide in scope will thus make TCL realize that its

09:45AM  15   exposed in the United States and other countries to

16   infringement cases and it will take the deal that's been

17   adjudicated fair, reasonable, and nondiscriminatory.

18          THE COURT:  Now, what indication do you have

19   that that's not available in California, in the

09:46AM  20   California action?

21          MR. STEVENSON:  Here's the indication so far.

22   And I'll just recap the bidding for your Honor.  We

23   originally went to California; and we told Judge Selna,

24   "You should follow what Judge Crabb did and what Judge

09:46AM  25   Davis have done."  In other words, if TCL won't be bound,

1    they can't be in court asking for a rate.

2            TCL then stood up and said, "Judge, when we

3    filed this case, we intended to be bound.  We are bound."

4            And the judge said, "All right.  You're bound.

09:46AM  5    I'm not going to dismiss your FRAND claims.  Let's go

6    ahead and move on."  And judge entered an order to that

7    effect noting they agreed to be bound.

8            We then went to TCL and said, "All right.

9    We've got to work on scheduling, and we've got to work on

09:46AM  10   a Rule 26 proposal.  Let's get down to work.  Our

11   understanding now is that, TCL, you've agreed to be bound

12   and what that means is the judgment in this case in

13   California is going to be a license.  We understand, TCL,

14   though" -- and they made this point both at the hearing

09:47AM  15   and most importantly in the correspondence I read to you

16   and showed you.  TCL came back and said, "Well, wait a

17   second.  We don't agree to an adjudication of the

18   worldwide rate."  We're not clear what we're going to

19   actually put out there, and we're not really sure what

09:47AM  20   Judge Selna is going to do either.  He indicated at the

21   hearing he may not end up adjudicating a worldwide rate.

22   And we put that part of what Judge Selna said in the

23   transcript in the record, that basically Judge Selna

24   said, "I don't know what I'm going to do."

09:47AM  25           THE COURT:  Well, you agree that with respect

Motion Hearing 1-8-2015

32

1  to the U.S., that the FRAND claims were first filed in

2  California.

3        MR. STEVENSON:  Yes, I do.

4        THE COURT:  And Judge Selna has not at this

09:47AM  5  point indicated that that's not worldwide.  He's just

6  said he's not certain.

7        MR. STEVENSON:  That's correct.

8        THE COURT:  Do you have a vehicle to present

9  to him that issue for him to decide whether or not --

09:48AM  10       MR. STEVENSON:  Yes.

11       THE COURT:  -- it is?

12       MR. STEVENSON:  We have a scheduling

13  conference coming up in a couple weeks.  I think it's on

14  the 26th of the month, and we intend to raise this issue

09:48AM  15  then and there.

16       THE COURT:  Well, if you get a ruling from

17  Judge Selna that the action pending before him does not

18  seek the full extent of the relief that you're seeking

19  here, then I think your argument would be much more

09:48AM  20  persuasive that you should be allowed to go forward with

21  that additional relief here.  But where all you've got is

22  the judge indicating that he hasn't decided that yet,

23  it -- it's difficult for me to say that we're not

24  overlapping him.

09:49AM  25       MR. STEVENSON:  Well, and I agree with your

1  Honor; and the issue there becomes if Judge Selna says,

2  "Well, TCL is objecting" -- and remember, your Honor, TCL

3  is the one who is agreeing to be bound.  They're the

4  master of their own agreement.  If TCL goes to Judge

09:49AM  5  Selna and says, "No, we agree to worldwide adjudication.

6  Notwithstanding what we've written in our letters, we

7  have been down to Texas.  We've had a hearing there.  We

8  agree it will be worldwide" and that ends --

9          THE COURT:  Well, what you've showed me in the

09:49AM  10  letter, it said that they have not -- it was

11  noncommittal.

12          MR. STEVENSON:  And we've had three or four

13  noncommittal telephone calls and exchanges of scheduling

14  proposals since then.  It's all been very noncommittal,

09:49AM  15  your Honor; and that's our problem, frankly.  If TCL is

16  avoiding essentially a resolution of a dispute that's

17  going to get it into paying worldwide royalties, then

18  being noncommittal is the best strategy because what they

19  can do is ride the California case down as long as they

09:50AM  20  can, hope this case goes away in the meantime, and then

21  when they get to a point in the California case, they can

22  say, "Well, we just wanted U.S. all along, judge, and you

23  really don't have the power to do anything about that

24  because that's all we're agreeing to be bound by and

09:50AM  25  that's what we meant all along."  So, the troublesome

Motion Hearing 1-8-2015

34

1    thing, your Honor, is the failure to commit and answer

2    the question.

3              THE COURT:  Well, at this point it appears

4    that you have not put TCL in a position where they have

09:50AM  5    to make a definitive commitment one way or the other in

6    front of Judge Selna.

7              MR. STEVENSON:  I was hoping that would also

8    happen today in front of your Honor because --

9              THE COURT:  Well, it might.  We'll see.  But

09:51AM  10   I, in any event -- all right.  I understand where things

11   are on FRAND.  So, that leaves the -- just your patent

12   infringement claim.

13             Tell me your understanding of the extent to

14   which Judge Selna has taken a position on whether or not

09:51AM  15   the declaratory judgment action or claim by TCL about the

16   Ericsson patents relates back to the filing of their case

17   in the Central District.

18             MR. STEVENSON:  I'm not a hundred percent sure

19   that he has taken a position on that.  He said the

09:51AM  20   California case was first filed, but what's interesting

21   is TCL couldn't have possibly anticipated these patents

22   because we didn't assert them against TCL until we filed

23   this case.  So, metaphysically can TCL really seek a

24   declaratory judgment of non-infringement before we have

09:52AM  25   even asserted the patents against them?  I don't think

35

1  they can.  I don't think there's any question but the

2  first time we -- these patents were asserted it was in

3  this lawsuit on the essential patents.

4          THE COURT:  Relation back is a doctrine that

09:52AM  5  often encompasses things that didn't occur until after

6  the filing of the initial complaint.  There can be claims

7  or additional injuries that occur after the filing that a

8  court will find relate back.  So, I don't think that the

9  fact that it could not have been anticipated at the time

09:52AM  10  they filed the action in the Central District is

11  definitive on that; but I -- really all I'm asking is

12  your understanding as to what Judge Selna has decided on

13  that issue.

14          MR. STEVENSON:  I think a fair reading of the

09:53AM  15  opinion is he decided that the declaratory judgment of

16  non-infringement was what he called the "hypothetical

17  coercive claim."  And the analysis was when TCL filed its

18  original declaratory judgment -- excuse me -- its

19  original case for breach of FRAND and most particularly

09:53AM  20  they had a claim for declaratory judgment asking

21  essentially what the rate ought to be, the question is is

22  that potentially a claim that triggers the hypothetical

23  coercive claim of patent infringement.  Okay?

24          He said it was and therefore the amendment to

09:53AM  25  add declaratory judgment relates back -- I don't know if

1 you use the word "relates back," but at least creates

2 subject matter jurisdiction as of filing.  All right?

3          But the real question then, becomes for

4 purposes of the first-filed rule that we're talking

09:54AM  5 about, does that actually make these patents first

6 filed -- the DJ first filed in California or not on these

7 two patents?  And my point is I don't see how it can be

8 because these patents weren't even asserted until we

9 asserted them out in East Texas.  And I've heard your

09:54AM 10 Honor's position that this may be, you know, part of a

11 legal fiction that gets created as part of the relation

12 back rule; and I don't know that Judge Selna really got

13 into it in this much detail.  In fact, I know he didn't

14 get into it in this much detail.  So, I don't think we

09:54AM 15 have guidance from him on what he's thinking in that

16 regard.

17          THE COURT:  I'm looking specifically at the

18 portion of his September 30 ruling that's on pages --

19 looks like 22 -- 21, 22, and 23; and I -- the reason I'm

09:55AM 20 asking you -- obviously I can read it as well, but you

21 have a better understanding of what was before him at

22 that time.  But he addresses specifically -- in the

23 middle of page 23, he says, "The court concludes that the

24 claims asserted in the SAC" -- which I assume is "second

09:55AM 25 amended complaint" -- "related to the claims asserted in

37

1  the original complaint are sufficiently related to

2  trigger the relation back doctrine."

3          The claims in the second amended complaint,

4  are those the ones that relate to Ericsson's claim of

09:56AM  5  patent infringement?

6          MR. STEVENSON:  Yes, they are.

7          THE COURT:  Well, do you believe that he did

8  not find that those patent infringement claims relate

9  back to the filing of the original complaint in

09:56AM  10  California?

11          MR. STEVENSON:  They were a declaratory

12  judgment.  So, I would think he would -- that's a fair

13  reading of what he found, yes.

14          THE COURT:  All right.  I know at the time of

09:56AM  15  the briefing in this motion -- it was just before

16  Judge Selna issued that September 30 ruling -- there was

17  a reference in Ericsson's briefing to interlocutory

18  review.  I know that Judge Selna denied a certification

19  of these issues for interlocutory review under I guess

09:57AM  20  1291.  Is there anything else pending or contemplated by

21  Ericsson to seek review of that either by interlocutory

22  appeal or mandamus?

23          MR. STEVENSON:  We don't plan a mandamus at

24  this juncture, and there's really nothing other than that

09:57AM  25  we could do.

38

1        THE COURT:  Okay.

2        MR. STEVENSON:  And, your Honor, further to

3   your question about first filed and relation back.  Just

4   so we're very clear, the only claims that were at issue

09:57AM   5   that Judge Selna would have been looking at in this

6   second amended complaint are the two Ericsson essential

7   patents as well as the TCL -- the two TCL patents they

8   filed on.  The five implementation patents that we have

9   sought leave to add by amendment were after -- have

09:57AM  10   nothing to do with this.  They're a completely different

11   story.

12        THE COURT:  All right.  Thank you.

13        Let me hear from the defendants now.

14        MR. KORNICZKY:  Good morning, your Honor.  My

09:58AM  15   name is Steve Korniczky.  And like McKool Smith, I also

16   represent TCL in the California action.  I would like to

17   just jump right to the last point that your Honor had

18   addressed with respect to the Ericsson patents and

19   whether they were considered by Judge Selna because in

09:59AM  20   fact he says, "Ericsson argues that TCL's declaratory

21   claims for invalidity and non-infringement of Ericsson's

22   '556 and '506 patents should be dismissed pursuant to

23   Rule 13(a) and/or the first-to-file rule."  So, the very

24   issue that they're arguing here before your Honor was

09:59AM  25   addressed by Judge Selna.  They said, well, the first --

1 these patents were first filed here in this court.  And

2 then as your Honor had pointed out, the language

3 basically states that those claims relate back to the

4 original complaint in California.

09:59AM 5           So, the way the court -- any court looks at

6 the first-to-file rule, it's not based upon a

7 claim-by-claim basis and when was this claim added and

8 when was that claim added.  They look at the case and

9 whether those issues relate back to the original

09:59AM 10 complaint and are the parties -- are the issues

11 substantially related or substantially the same.

12           THE COURT:  I understand that there is some

13 divided authority on that, but clearly Judge Selna felt

14 that the bulk of the authority was in the way he ruled.

10:00AM 15 So, I understand.

16           MR. KORNICZKY:  That's correct, your Honor.

17           There are a lot of issues I think that were

18 somewhat misrepresented by plaintiffs' argument.  First

19 off, let me jump right to the issue of this -- what

10:00AM 20 Judge Selna stated in terms of the scope of the FRAND

21 action in California.  He did not say he's not going to

22 determine whether there's a worldwide license at issue or

23 whether it's just a California or whether it's just a

24 United States issue, nor did TCL take that position.  The

10:00AM 25 point that Judge Selna was making is that on a motion to

40

1   dismiss, he wasn't prepared to decide the merits of the

2   case and what the scope of any issue was going to be in

3   the California action.

4          We never said, "Oh, this is only a U.S. issue"

10:01AM  5   or "This is absolutely a worldwide issue."  There are so

6   many issues that are at -- that are going to need to be

7   addressed in the California FRAND action.  For example,

8   one of the issues was is the rate the same in every

9   country or is it one rate worldwide.

10:01AM  10         So, for example, Mr. Stevenson said that we

11  have a -- Ericsson has a lot of patents or SEP patents in

12  the United States.  Well, what about the countries where

13  they don't have any patents?  Does that mean that you

14  apply some sort of FRAND rate that would have to be paid

10:01AM  15  for phones sold in those countries?

16         So, those are the issues; and Judge Selna

17  said, "I'm not prepared to figure out at this stage how

18  we're going to resolve this dispute."  And what we

19  said --

10:02AM  20         THE COURT:  Well, what is TCL's position on

21  whether or not it will be bound worldwide or simply in

22  the United States?

23         MR. KORNICZKY:  Our position is we will be

24  bound by whatever Judge Selna decides he's going to

10:02AM  25  decide.  If he's willing to decide a worldwide issue,

1  we're going to be bound by that.  If he says, "It's not

2  my authority to decide what we do in France or Germany or

3  Brazil," then we're not going to try to force him to make

4  that call or to do something he doesn't feel he's

10:02AM  5  permitted to do.  So, our position is if Judge Selna will

6  decide this issue worldwide, we're going to be bound by

7  it.

8            THE COURT:  Okay.

9            MR. KORNICZKY:  Okay.  The issue as to whether

10:02AM  10  the --

11            THE COURT:  Let me ask you one follow-up to

12  that.

13

14

10:02AM  15

16

17

18

19

10:03AM  20

21

22

23

24

10:03AM  25

42

1    decide that he's got that power.

2              MR. KORNICZKY:  I think -- okay.  I think

3    we're oversimplifying the issue because one of the issues

4    is is it one rate -- Mr. Stevenson said they have a

10:03AM 5    blended rate -- versus are there different rates per

6    country.  So, we might argue that position.

7              Another issue that we're arguing is --

8              THE COURT:  Are you going to argue that

9    position?

10:03AM 10             MR. KORNICZKY:  Sorry?

11             THE COURT:  Are you going to argue that it

12   should be country-by-country rate?

13             MR. KORNICZKY:  Your Honor, honestly I don't

14   know.  I don't know what our position is in that respect.

10:04AM 15             THE COURT:  You have filed this action.

16             MR. KORNICZKY:  What we have asked for, your

17   Honor -- in order to determine what TCL is going to

18   argue, we also need to see the discovery.

19             For example, Ericsson claims that they have

10:04AM 20   entered into a hundred licenses around the world for

21   these standard essential patents.  We have been trying to

22   get those for the last six months, and they've refused to

23   produce them.  Okay?  I think we've got five agreements.

24   We don't know what's in that.  We don't know if what the

10:04AM 25   market does is a worldwide license.  We don't know if the

terms differ for companies out of China like our company.

For example, as far as we know, TCL is the only Chinese

handset manufacturer that's been paying licenses to

Ericsson.

10:04AM

Mr. Stevenson said we have been working

royalty-free all these years.  No, we haven't.  For seven

years we have been paying royalty rates, and it was only

two days before that license was about to expire that we

filed a lawsuit in California.  So, this issue as to

10:05AM whether it's a worldwide rate or if it's a worldwide

license or whether the terms will differ on a worldwide

basis in our view goes to the merits of the case.  And we

haven't seen -- we have to argue what's fair and

reasonable; and in order to argue that, we've got to

10:05AM understand what's been done in the past.

THE COURT:  Let me ask you a follow-up

question then, Mr. Korniczky.  I understand your position

about needing to see the evidence.  Do you intend to take

the position -- if you determine that it should be a

10:05AM country-by-country license or rate based on the

evidence -- if you determine based on the evidence that

the rate should be country by country, do you intend to

argue that Judge Selna does not have the authority to

make the decision about what those rates should be around

10:06AM the world?

Motion Hearing 1-8-2015

44

1          MR. KORNICZKY:  Not at this time, your Honor.

2          THE COURT:  Okay.

3          MR. KORNICZKY:  Okay.  One other point.  You

4   know, Mr. Stevenson says that we want to resolve this

10:06AM    5   issue country by country.  Ericsson has sued TCL in seven

6   or eight different countries -- okay -- based upon these

7   SEP patents.  They're not asking any of those countries

8   to resolve the FRAND issue.  It was TCL that filed this

9   action and said, "Look, we're asking the court to figure

10:06AM   10   out what's the FRAND rate, what is it that we're supposed

11   to be paying."  And we've told Judge Selna on the record

12   we will be bound by it.  "You tell us what we have to

13   pay.  If we have to pay it, we're going to pay it."

14          THE COURT:  And if Judge Selna decides that it

10:07AM   15   should be a worldwide blended rate, then you will be

16   bound by that?

17          MR. KORNICZKY:  Absolutely, your Honor.

18          THE COURT:  All right.  Let me ask you to

19   address for a moment -- I know you have been talking

10:07AM   20   about the two essential patents that were addressed in

21   the second amended complaint in California.  What about

22   the five implementation patents that Ericsson is seeking

23   to assert in the fourth amended complaint here?

24          MR. KORNICZKY:  Your Honor, those five patents

10:07AM   25   have not been made a part of this complaint in this case

1  at this time.  Okay.  We had filed a Motion to Transfer.

2  A lot of permutations and motion filing and procedural

3  gamesmanship has taken place, which we can get into; but

4  to jump to your point specifically to these five patents,

10:08AM  5  if -- I'm not sure what Ericsson's position is because

6  Mr. Stevenson just said that these are not related to

7  those patents, these are not related to those SEPs.

8  Well, if they're not related, then why are you bringing

9  them in this particular case?

10:08AM  10         If they are related, then shouldn't we be

11  allowing Judge Selna to decide whether those patents

12  should be added to the case in California?  In other

13  words, if this case is transferred, isn't that a decision

14  that we would want Judge Selna to make?  I mean, if the

10:08AM  15  shoe is on the other foot and a case is coming to this

16  court and somebody wants to make it more complicated,

17  the -- you know, the court's scheduling process, the

18  court's patent local rules, for example, on identifying

19  terms and conducting -- exchanging infringement and

10:08AM  20  invalidity contentions should be something that goes to

21  the case management and something that the presiding

22  judge ought to be able to decide.  So, if the case is

23  going to be transferred, I think our position is maybe we

24  ought to let Judge Selna decide the issue.

10:09AM  25         If the case is staying here, they've already

1  said, "Well, these patents aren't related."  So, then why

2  would they be in this case?

3           If they are added to this case, then TCL is

4  going to be prejudiced because we're expected to -- I

10:09AM  5  guess we had -- what -- 140 days to put together

6  invalidity contentions for the first set of patents.  Now

7  we've got about 40 days left in order to do 5 new patents

8  and conduct prior art searches, figure out what terms are

9  going to be argued.  I think there's over a hundred

10:09AM  10  claims that Ericsson is suggesting are at issue in this

11  case.  Well, I don't know how we get that done.  If we

12  change the schedule and give us a little bit more time to

13  get that done, well, then that would argue against why

14  are you adding that to this case.  They can be litigated

10:09AM  15  in a different -- you know, a different case, different

16  patent dispute, a separate and distinct matter.  They're

17  not going to be prejudiced by that.

18           Second reason --

19           THE COURT:  Well, if those are filed in a

10:10AM  20  separate action here, do you have a basis to contend that

21  those would be, in effect, covered by the California

22  action, that the California action would be first filed

23  as to that?

24           MR. KORNICZKY:  I don't -- I don't think so,

10:10AM  25  your Honor.  I should have thought about that before

47

         standing up here.  But that said, I guess the way I would

         look at these patents is they're not standard essential

         patents; and, so, if we were to put those in with this

         case or the California case, what we're asking the jury

10:10AM  to do is going to be pretty confusing because if you look

         at the damages issue in particular -- the *Motorola versus*

         *Microsoft* case says that the way we determine the royalty

         rate in a FRAND action is based upon a modified

         Georgia-Pacific factor.  So, they just use some of the 15

10:11AM  factors.  So, you would have the SEP patents being looked

         at in that respect.  You would have the non-SEP patents

         looking at the issue from the Georgia-Pacific factors and

         expecting the jury to keep track of all of those.

                 The second thing that would be similarly

10:11AM  confusing, in my view, is the theory of infringement.  My

         understanding of the standard essential patents theory of

         infringement is, well, if you practice the standard, then

         you must be infringing these standard essential patents.

         Well, then the question becomes does the jury get

10:11AM  confused with respect to these nonstandard essential

         patents and how are they going to look at those issues.

                 So, you take ten patents.  You have two

         infringement theories and you have two damages theories

         and in my view I guess, thinking it through up here, is

10:12AM  that you end up in a real complex trial subject to all

Motion Hearing 1-8-2015

48

1    sorts of mistakes.

2            The other issue, your Honor, is from what I

3    understand Ericsson is asking the court to do is to add

4    these five patents to this case and then sever them,

10:12AM  5    transfer the related issues -- in other words, the SEP

6    patents and the FRAND issue -- to California but then

7    sever out and keep these five non-SEP patents here.  And

8    there's no Motion to Sever pending.

9            So, again, I feel like there's a conflict here

10:12AM  10   because they're arguing they should be added to this

11   theoretically because they're related but you should

12   sever them out because theoretically they're not related.

13   And that just doesn't make sense.

14           THE COURT:  Although you have indicated you

10:13AM  15   don't have any basis to feel that they should be part of

16   the California action either.

17           MR. KORNICZKY:  I do not.  I do not think they

18   should be part of this case; nor do I feel they should be

19   part of the California case, your Honor.

10:13AM  20           THE COURT:  Okay.  I understand your position.

21           MR. KORNICZKY:  And then one last issue again,

22   just to put a fine point on the argument.  The suggestion

23   that the FRAND issue in California is different from the

24   FRAND issue here I think has no basis because effectively

10:13AM  25   what we're asking in California is for the court to find

49

1   that Ericsson has breached its FRAND obligation.  What

2   Ericsson is asking this court to determine is that we

3   haven't breached our FRAND obligation, we have complied

4   with it.

10:13AM   5           The idea that Mr. Stevenson said, "Well, we're

6   asking this court to determine that TCL is an unwilling

7   licensee," they're asking for the exact same thing in

8   California.  So, that's not a point to distinguish the

9   claims.

10:14AM   10          THE COURT:  And on your action in California,

11  is there any geographic limitation?  In other words,

12  you're asking the court in California to find that

13  Ericsson has not complied with its FRAND obligations

14  without any geographic limitations.

10:14AM   15          MR. KORNICZKY:  That's correct, your Honor.

16          THE COURT:  Okay.  So, that would be worldwide

17  if the court is willing to do that.

18          MR. KORNICZKY:  If the court is willing to do

19  it.

10:14AM   20          THE COURT:  Okay.  All right.  Thank you.

21          MR. KORNICZKY:  I think we have covered

22  everything, your Honor.  I didn't go through the slide

23  but all the information in the slide is in our briefs and

24  we'd be happy to submit a copy of the slide to the court

10:14AM   25  for what we did review.  Thank you, your Honor.

1          THE COURT:  Mr. Stevenson.

2          MR. STEVENSON:  May I take a few minutes just

3   to talk about where I think we are after the answers to

4   your Honor's questions by Mr. Korniczky?

10:15AM   5          THE COURT:  All right.

6          MR. STEVENSON:  So, looking back on how this

7   transpired, the agreement to be bound first came up when

8   we were in California arguing that the court should not

9   determine a rate unless TCL was willing to be bound.  And

10:15AM   10  Judge Selna seemed receptive to that argument, at which

11  point TCL said, "We agree to be bound."  And it's that

12  agreement to be bound that then moved it from an advisory

13  issue that the court may have declined to do on a

14  declaratory judgment into a sufficiently ripe dispute for

10:15AM   15  adjudication.  So, that's why the agreement to be bound

16  is so critical.

17          Now, what I heard Mr. Korniczky saying, I

18  think, is -- in response to your questions is that the

19  Central District of California is going to adjudicate the

10:16AM   20  FRAND terms of Ericsson, that they're not going to

21  suggest that a worldwide adjudication is inappropriate,

22  they're going to reserve the right to assert that the

23  rates should be calculated under FRAND on a

24  country-by-country basis as opposed to blended.  And

10:16AM   25  that's all right.  They can assert, you know, that.  But

Motion Hearing 1-8-2015

51

1  as long as the result of this is a global license under

2  the terms that are adjudicated by Judge Selna to be

3  FRAND, if he's willing to do a global adjudication, I

4  think that's what we're asking for.  And if that's not

10:16AM  5  going to happen in California, if my understanding is

6  wrong, that's what we're going to be asking to happen in

7  this court.  And if Judge Selna is going to do that, then

8  we're happy to proceed and have our FRAND trial out

9  there.  But if I've misunderstood, then I'm going to

10:17AM  10  persist in my request that this court keep the FRAND

11  adjudication here because that's what we're asking for is

12  a global license to result from adjudication.

13          THE COURT:  And when is your scheduling

14  conference before Judge Selna?

10:17AM  15          MR. STEVENSON:  It's on the 26th, I believe.

16          THE COURT:  Of?

17          MR. STEVENSON:  January.

18          THE COURT:  All right.  And you intend to

19  present these issues to him to --

10:17AM  20          MR. STEVENSON:  I think there will be some

21  déjà vu at that hearing.

22          THE COURT:  All right.  And talk to me about

23  the implementation patents.

24          MR. STEVENSON:  Mr. Korniczky's point was,

10:17AM  25  well, they're not related.  Well, Ericsson has a number

1  of patents; and they aren't essential patents.  They're

2  not governed by the FRAND commitment.  As far as putting

3  them in this case -- we don't think they should be

4  transferred out to California.  You know, I think in

10:18AM  5  fairness -- TCL filed in its forum of choice on its

6  patents.  We think, in fairness, we should be able to

7  file in our forum of choice on our patents.  And I don't

8  think the fact that TCL filed a breach of FRAND case in

9  California transforms that venue into the funnel for any

10:18AM  10  future patent disputes between the companies regardless

11  of what the patents are or where they arise.

12          We have currently on the docket a November

13  trial date.  Although I'd like to keep that, I recognize

14  that adding these patents to the case and getting to a

10:18AM  15  November trial is going to be challenging.  Mr. Mathews

16  has run the scheduling numbers and can speak to that if

17  your Honor is interested.  It can be done.  We're willing

18  to either -- if your Honor wishes just to deny leave to

19  amend, we're willing to file another action, if that's

10:19AM  20  what you prefer; or if the court wishes to sever those

21  and grant leave to amend and keep going forward, that's

22  another vehicle we could do this in.  Candidly, we're

23  ambivalent; but we would like to get to trial on our

24  implementation patents at the soonest point the court

10:19AM  25  feels is reasonable and can accommodate us on the docket.

53

1      THE COURT:  Well, where I'm leading right now

2  is to withhold action on the Motion to Transfer until

3  after you have presented your issues to Judge Selna later

4  this month.

10:19AM  5      MR. STEVENSON:  Okay.

6      THE COURT:  I do feel that since Judge Selna

7  has considered the question of whether or not the claims

8  regarding the standard essential patents relate back,

9  that this court owes deference to Judge Selna on that

10:20AM  10  issue.  So, if he determines that the FRAND allegations

11  currently before him are -- encompass the claims that you

12  have asserted here, by indicating that worldwide versus

13  U.S. is not an issue, then I would expect that the Motion

14  to Transfer would be granted.

10:20AM  15      Which gets me to the implementation patents.

16  If you do not want them to be part of that, then the

17  simplest thing would be for you to withdraw the motion to

18  add them in.  I guess I can deny it as well.  If you tell

19  me that you don't object to denying it, then I'll deny

10:21AM  20  it.  But if it's not denied or withdrawn, then it would

21  be part of the transferred action.

22      MR. STEVENSON:  Well, at that juncture we'll

23  go ahead and withdraw it.  The reason we really wanted to

24  amend to add those to this cause of action is we have a

10:21AM  25  trial date on the docket; and there's an attractiveness,

Motion Hearing 1-8-2015

54

1  obviously, to having a trial date that is faster than

2  we're likely to get out in the Central District of

3  California.  But if your Honor's suggestion is that if

4  there is a transfer this is all going to go across

10:21AM  5  together and is giving me the option to excise the

6  implementation patents from that, I will take that option

7  and excise them by withdrawing our request to add them in

8  the case.

9        THE COURT:  Okay.  Well, then I'll show that

10:22AM  10  the Motion to Amend that asserts the implementation

11  patents -- I think that's the fourth amended complaint.

12  I'm not positive.

13        MR. STEVENSON:  I believe it's third and

14  fourth.  I think there are two amendments.

10:22AM  15        THE COURT:  All right.  Then, that those

16  motions -- those two motions will be considered

17  withdrawn.

18        And I will await a notice, which I will

19  instruct you to file as soon as you have gotten any

10:22AM  20  indication from Judge Selna following your scheduling

21  conference.  And that would include if he says, "No, I'm

22  not going to address it."  Then tell me that as well.

23        MR. STEVENSON:  Thank you, your Honor.

24        THE COURT:  And I know there are --

10:22AM  25        MR. STEVENSON:  Your Honor, one other thing

1    I'd like to ask your consideration of.

2                 THE COURT:  Okay.

3                 MR. STEVENSON:  With regard to our declaratory

4    judgment under the Ericsson -- excuse me -- under the TCL

10:23AM 5    essential patents.  We've requested just to drop that.

6    As I've told your Honor, those claims are pending out in

7    the Central District of California.  We don't have any

8    objection to going forward with TCL's patents out in the

9    Central District of California once, you know, Judge

10:23AM 10   Selna denied the Motion to Dismiss.  We would like to

11   request that the court dismiss without prejudice our

12   declaratory judgment on the TCL patents of

13   non-infringement and invalidity.

14                THE COURT:  All right.  Let me hear from the

10:23AM 15   defendant.

16                Is there any objection to that?

17                MR. KORNICZKY:  No objection to that, your

18   Honor.  But I do have a question with respect to one of

19   the other points that you had raised.

10:23AM 20                THE COURT:  Okay.  Well, let me -- before we

21   get to your question, let me just say that then the

22   request to dismiss the counterclaim seeking declaratory

23   relief as to the TCL patents will be granted.

24                MR. KORNICZKY:  That's correct, your Honor.

10:24AM 25                THE COURT:  Okay.  And what is your question,

56

1   Mr. Korniczky?

2          MR. KORNICZKY:  Just to get a better

3   understanding of the -- you said that your Honor was

4   considering holding a decision on the Motion to Transfer

10:24AM  5   pending the hearing before Judge Selna later this month,

6   but the hearing that is before Judge Selna later this

7   month is a scheduling conference.  So, I don't see

8   Judge Selna deciding this issue as to what the scope of

9   the -- the scope of this license or FRAND issues is going

10:25AM  10   to be because the same thing he said at the Motion to

11   Dismiss -- he said to Ericsson's counsel, "That's a fine

12   opening argument that you're making, but this is not the

13   time and place."

14          And, so, at the scheduling conference,

10:25AM  15   although we may discuss how the case ought to go forward,

16   I don't know if he's going to come out and say, "Okay.

17   Well, this is what we're going to do."

18          So, my point is we may -- your Honor may be

19   delaying a decision on the Motion to Transfer which --

10:25AM  20   does that mean we have to move forward in this case with

21   the expenses that both clients are expending, or is there

22   stay?  I guess I'm trying to get a better understanding

23   of when would a decision come out and what's it depend

24   on.

10:25AM  25          THE COURT:  A decision would come out promptly

Motion Hearing 1-8-2015

57

1   after I learn what has transpired at that scheduling

2   conference.  Are there events that will be occurring in

3   between now and then?

4             MR. KORNICZKY:  The other issue, your Honor,

10:26AM   5   if this case is transferred, then what Mr. Stevenson says

6   his claim is about would also be transferred to

7   Judge Selna and those like issues would be decided in one

8   court.  So, I guess -- I guess I just don't see a reason

9   to delay the transfer if there are, you know, whatever

10:26AM   10   percentage -- 85, 90, 99 percent of the case are already

11   identical.

12             See, we don't think that the FRAND cases are

13   different, your Honor.  But if Mr. Stevenson is correct

14   that his FRAND action is somehow broader than the

10:26AM   15   California action, which we disagree with, then it would

16   be addressed by Judge Selna.

17             THE COURT:  And I guess my thought on that,

18   Mr. Korniczky, is I just want to give Judge Selna an

19   opportunity to hear that argument and make whatever

10:27AM   20   ruling he deems appropriate.  And I think that he's

21   entitled to make his ruling or indication on that, and I

22   want to give him an opportunity to do so before sending

23   this out there.  If he takes the position that the claims

24   as Ericsson defines them that are currently pending here

10:27AM   25   are not before him out there, then that might have some

Motion Hearing 1-8-2015

58

1  influence on the ruling.

2           But in any event, I understand your position

3  and it may or may not resolve everything, but that's just

4  a little over two weeks away.  So, I just want to give

10:27AM  5  him that opportunity.

6           MR. KORNICZKY:  Okay.  That addresses my

7  question, your Honor.  Thank you.

8           MR. FINDLAY:  Your Honor, may I address the

9  question that you had about other deadlines coming up in

10:28AM  10  this case?

11           THE COURT:  Yes, Mr. Findlay, you may.

12           MR. FINDLAY:  Okay.  I do think that we

13  have -- counsel, correct me if I'm wrong -- I think we

14  have exchanged 4-1 terms.  I think 4-2 proposed

10:28AM  15  constructions are due at the end of this month.  We

16  certainly would request as -- one of our motions that we

17  kind of have not talked about but was indirectly

18  discussed, we certainly would request that we have a stay

19  until the time wherein your Honor hears the report back

10:28AM  20  from what Judge Selna does so we can stop the bleeding on

21  both fronts, if you will.

22           MR. STEVENSON:  Your Honor, as far as the

23  patent deadlines go, I think those are probably mooted

24  based on what has transpired today.  I think all the

10:28AM  25  patents are either being withdrawn from the case,

59

1    dismissed from the case, or are ultimately going to go

2    over to California regardless of this geographical scope

3    issue that's just pertinent to whether the FRAND case

4    stays here.

10:29AM    5            THE COURT:  So, you don't have any objection

6    then to a stay of those deadlines while this is being

7    determined?

8            MR. STEVENSON:  I don't have any objection to

9    stay the patent deadlines.  And then over the next two

10:29AM   10   weeks, we don't plan to do anything significant with

11   regard to discovery as to the FRAND issues; but what I

12   would like is in the event news comes back from

13   California that influences your Honor in deciding to keep

14   the worldwide FRAND adjudication, we would like to have

10:29AM   15   the case in a position where we can go to trial in

16   November without losing that trial setting for our FRAND

17   case.

18           THE COURT:  Well, then what I'm going to do is

19   just say that the case will be stayed pending the receipt

10:29AM   20   of the notice following that scheduling conference; and

21   we'll go from there.

22           MR. STEVENSON:  Thank you, your Honor.

23           MR. FINDLAY:  Thank you, judge.

24           THE COURT:  All right.  Is there anything else

10:29AM   25   from your side, Mr. Stevenson?

Motion Hearing 1-8-2015

60

1     MR. STEVENSON:  No, nothing from us, your

2  Honor.  Thank you.

3         THE COURT:  All right.  Mr. Findlay, anything

4  else from your side?

10:30AM   5         MR. FINDLAY:  Nothing else, your Honor.  Thank

6  you very much.

7         THE COURT:  All right.  Thank you.  And we're

8  adjourned.

9         (Proceedings adjourned, 10:30 a.m.)

10

11

12  COURT REPORTER'S CERTIFICATION

13         I HEREBY CERTIFY THAT ON THIS DATE, JANUARY 8,

14  2015, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

15  RECORD OF PROCEEDINGS.

16

17

18                      /s/_____
                     TONYA JACKSON, RPR-CRR
19

20

21

22

23

24

25